IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO.: 7:16-CV-30-H

BONNIE PELTIER, as Guardian
of A.P., a minor child;
ERIKA BOOTH, as Guardian of
I.B., a minor child; and
PATRICIA BROWN, as Guardian
of K.B., a minor child;

    Plaintiffs,

v.

**ORDER**

CHARTER DAY SCHOOL, INC.,
ROBERT P. SPENCER, CHAD
ADAMS, SUZANNE WEST, COLLEEN
COMBS, TED BODENSCHATZ, and
MELISSA GOTT in their
capacities as members of the
Board of Trustees of Charter
Day School, Inc., and THE
ROGER BACON ACADEMY, INC.,

    Defendants.

This matter is before the court on defendants' motion to dismiss all claims against them for failure to state a claim upon which relief can be granted. Plaintiffs have responded, and defendants have replied. This matter is ripe for adjudication.

**BACKGROUND**

Plaintiffs bring suit on behalf of three minor children, all of whom are students at Charter Day School (the "school") in

kindergarten, fourth and eighth Graders respectively. Charter Day School is a co-educational charter school in Brunswick County, North Carolina. The uniform policy or dress code of the school requires girls to wear skirts, skorts or jumpers and boys to wear either pants or shorts. All students are required to wear gym uniforms for gym class. Failure to comply with the policy results in disciplinary measures.

Plaintiffs bring this action challenging the fact that girls are not allowed to wear shorts or pants because they are girls. Plaintiffs seek declaratory and injunctive relief, along with nominal damages and attorney fees under Title IX and the North Carolina and United States Constitutions. They also assert defendants Charter Day School, Inc. ("CDS") and The Roger Bacon Academy, Inc. ("RBA") are in breach of contracts, of which plaintiffs are third-party beneficiaries.[1]

Plaintiffs do not challenge the school's authority to impose a uniform policy or argue that uniform policies in general are unlawful. Rather, here, plaintiffs challenge the specific sex-based requirement that girls must wear skirts, skorts or jumpers

---

[1] The amended complaint alleges CDS and RBA are linked "by a complex interconnecting set of personal, corporate and operational relationships." Am. Compl. ¶111 [DE #13]. This relationship is detailed in the amended complaint, noting Baker Mitchell is the current secretary of CDS and the owner of RBA. Mr. Mitchell filed the application with the State Board of Education for a charter. In 2005, CDS entered into an agreement with RBA for management and facility services.
2

kindergarten, fourth and eighth Graders respectively. Charter Day School is a co-educational charter school in Brunswick County, North Carolina. The uniform policy or dress code of the school requires girls to wear skirts, skorts or jumpers and boys to wear either pants or shorts. All students are required to wear gym uniforms for gym class. Failure to comply with the policy results in disciplinary measures.

Plaintiffs bring this action challenging the fact that girls are not allowed to wear shorts or pants because they are girls. Plaintiffs seek declaratory and injunctive relief, along with nominal damages and attorney fees under Title IX and the North Carolina and United States Constitutions. They also assert defendants Charter Day School, Inc. ("CDS") and The Roger Bacon Academy, Inc. ("RBA") are in breach of contracts, of which plaintiffs are third-party beneficiaries.[1]

Plaintiffs do not challenge the school's authority to impose a uniform policy or argue that uniform policies in general are unlawful. Rather, here, plaintiffs challenge the specific sex-based requirement that girls must wear skirts, skorts or jumpers

---

[1] The amended complaint alleges CDS and RBA are linked "by a complex interconnecting set of personal, corporate and operational relationships." Am. Compl. ¶111 [DE #13]. This relationship is detailed in the amended complaint, noting Baker Mitchell is the current secretary of CDS and the owner of RBA. Mr. Mitchell filed the application with the State Board of Education for a charter. In 2005, CDS entered into an agreement with RBA for management and facility services.

and are not allowed to wear pants or shorts. Plaintiffs allege this requirement subjects them to archaic sex stereotypes about what constitutes appropriate behavior and conduct for girls, reinforcing the notion that girls, but not boys, must dress and behave modestly, that they are less physically active than boys and that they should behave and dress in a manner that is otherwise traditionally considered appropriately feminine. As a result, they have refrained or been prevented from engaging in certain physical activities, including climbing gym structures, sliding on a slide, swinging from monkey bars, and doing cartwheels. They claim these requirements burden them with restrictions on their comfort, warmth, and freedom of movement that the boys do not suffer and therefore the policy constitutes unlawful sex discrimination. Defendants have moved to dismiss plaintiffs' claims. Appropriate responses and replies have been filed, and this matter is ripe for adjudication.

## COURT'S DISCUSSION

### I. Standard of Review

A federal district court confronted with a motion to dismiss for failure to state a claim should view the allegations of the complaint in the light most favorable to the plaintiff. See Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). The intent of Rule 12(b)(6) is to test the sufficiency of a complaint.

3

Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion "'does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" Id. (quoting Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992)). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 (2007).

"[A] complaint need not 'make a case' against a defendant or 'forecast evidence sufficient to prove an element' of the claim." Chao v. Rivendell Woods, Inc., 415 F.3d 342, 349 (4th Cir. 2005) (quoting Iodice v. United States, 289 F.3d 270, 281 (4th Cir. 2002)). Rule 8 of the Federal Rules of Civil Procedure provides "for simplicity in pleading that intends to give little more than notice to the defendant of the plaintiff's claims and that defers until after discovery any challenge to those claims insofar as they rely on facts." Teachers' Ret. Sys. of La. v. Hunter, 477 F.3d 162, 170 (4th Cir. 2007). A complaint is generally sufficient if its "'allegations are detailed and informative enough to enable the defendant to respond.'" Chao, 415 F.3d at 349 (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1215 at 193 (3d ed. 2004)). Thus, a complaint satisfies the Rules if it gives "fair notice" of the claim and

"the grounds upon which it rests." Twombly, 550 U.S. at 554-55 (internal quotation marks omitted).

## II. Equal Protection Claims

Defendants move to dismiss plaintiffs' claims under the Equal Protection Clause ("EPC") of the United States Constitution. "The equal protection clause of the Fourteenth Amendment protects individuals against intentional, arbitrary discrimination by government officials." Hayden ex rel. A.H. v. Greensburg Cmty. Sch. Corp., 743 F.3d 569, 577 (7th Cir. 2014)(quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 1074-75, 145 L.Ed.2d 1060 (2000) (per curiam).

Defendants argue plaintiffs have not alleged a violation of a constitutional right. Defendants first argue that because plaintiffs voluntarily chose to attend the school (as it is a charter school) and were informed of the uniform policy prior to enrollment, they cannot now claim they have been unlawfully discriminated against. Defendants cite no law to support this waiver argument and do not dispute that charter schools are statutorily-defined public schools. N.C. Gen. Stat. § 115C-218.15; see Yarbrough v. East Wake First Charter School, 108 F.Supp.3d 331, 337 (E.D.N.C. 2015). Additionally, they argue the alleged harms are "self-imposed" and can be prevented by

5

wearing a skort or wearing leggings under a skirt or jumper, both allowed by the uniform policy. Defendants cite no legal authority to support this argument either, and the court finds this argument is, in reality, a factual contention more appropriate for consideration at a later stage of litigation. Whether plaintiffs' evidence can prove the harms alleged is not at issue on the motion to dismiss.

Next, defendants argue the uniform policy is not based on impermissible sex stereotypes, referencing the written purpose of the uniform policy in the CDS Handbook. In this section of their brief, defendants note that North Carolina allows charter schools to operate single-sex educational facilities. Noting this statute, defendants argue that because plaintiffs' alleged harms would fail as a matter of law at a single-sex school, they automatically fail here. Once again, defendants cite no case law to support this argument, and the court finds this argument to be irrelevant to whether plaintiffs have alleged a claim sufficient to survive a motion to dismiss. "Whether and when the adoption of differential grooming standards for males and females amounts to sex discrimination is the subject of a discrete subset of judicial and scholarly analysis." Hayden, 743 F.3d at 577 (citing numerous cases involving allegations of sex discrimination regarding dress codes).

Finally, defendants argue courts traditionally have and should refrain from regulating the day-to-day issues presented in local schools, citing Epperson v. Arkansas, 393 U.S. 97, 104 (1968). While this court agrees day-to-day issues presented in local schools are best left to local school authorities, it is well established that children do not "shed their constitutional rights . . . at the schoolhouse gate." Tinker v. Des Moines Independent Community School Dist., 393 U.S. 503, 506 (1969). Here, plaintiffs have alleged that defendants promulgated and are enforcing a uniform policy that requires girls to wear skirts, and on its face, treats girls differently than boys. Further, plaintiffs argue this policy and its enforcement cause girls to suffer a burden that the boys do not suffer and that the policy is based on impermissible sex stereotypes. Plaintiffs argue this policy and its enforcement constitute unconstitutional sex discrimination. Plaintiffs have alleged enough facts to state a claim under the Equal Protection Clause of the Fourteenth Amendment.[2] Finding inadequate support for

---

[2] The court notes it is not yet deciding what standard applies to plaintiffs' claim and specifically whether the claim rises to the level required for intermediate scrutiny. See Sturgis v. Copiah County School Dist., 2011 WL 4351355 (S.D. Miss. 2011). This court notes that "sex-differentiated standards consistent with community norms may be permissible to the extent they are part of a comprehensive, evenly-enforced grooming code that imposes comparable burdens on both males and females alike." Hayden, 743 F.3d at 581.

7

defendants' arguments in their brief, the motion to dismiss the EPC claims is DENIED.

As to plaintiffs' claims under the North Carolina Constitution, defendants' motion to dismiss does not thoroughly address this issue. In their reply brief, defendants argue that there are adequate state remedies precluding the NC Constitutional claim. However, since plaintiffs have not had an opportunity to fully respond, this issue is not properly before the court. Defendants may raise this issue in a motion for summary judgment, if so desired.

Therefore, plaintiffs' EPC claims under the United States and North Carolina Constitutions survive defendants' motion to dismiss.

### III. Title IX Claims

Title IX provides: "[n]o person ... shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). An implied private right of action exists for enforcement of Title IX. Preston v. Virginia ex rel. New River Cmty. Coll., 31 F.3d 203, 206 (4th Cir.1994) (citing Cannon v. Univ. of Chicago, 441 U.S. 677, 680, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979)). "Title IX has no administrative exhaustion

8

requirement and no notice provisions. Under its implied private right of action, plaintiffs can file directly in court[.]" Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246, 255, 129 S. Ct. 788, 795, 172 L. Ed. 2d 582 (2009). The court notes that not all distinctions on the basis of sex are impermissible under Title IX. See, e.g., 20 U.S.C. § 1686 (allowing separate living facilities for different sexes); see United States v. Virginia, 518 U.S. 515, 533, 116 S.Ct. 2264, 2276 (1996) ("Physical differences between men and women, however, are enduring.")(quoting Ballard v. United States, 329 U.S. 187, 193, 67 S.Ct. 261, 264 (1946).

To allege a Title IX claim, plaintiffs must show (1) they were excluded from participation in, denied the benefits of, or subject to discrimination of an educational program or activity; (2) that the educational institution was receiving federal financial assistance at the time; and (3) that the discrimination caused harm. In this circuit, courts have looked to Title VII cases as guidance for Title IX cases. Jennings v. Univ. of N.C., 482 F.3d 686, 695 (4th Cir.2007).

The parties argue at length about the appropriate regulations applicable to this case and about their validity. However, the court finds that there is no need to reach those issues at this stage of the litigation. Plaintiffs have alleged facts of each of the above elements sufficient to survive a motion to dismiss.

Whether plaintiffs' evidence will bear out these allegations and how the discussed regulations affect the analysis are issues better suited for a later stage of litigation. The court desires to give proper deference to the proper regulations, but cannot do so on the record before it.

The court notes the revocation of the regulations regarding personal appearance codes by the Department of Education ("USED") in 1982. Nondiscrimination on the Basis of Sex in Education Programs and Activities Receiving of Benefiting From Federal Financial Assistance, 47 Fed. Reg. 32526-02 (July 28, 1982) (codified at 34 C.F.R. §§ 106.31(b)). The court also notes the Department of Agriculture ("USDA") implementing regulations do contain a prohibition against "discriminat[ing] against any person in the application of any rules of appearance." 7 C.F.R. § 15a.31(b)(5). Further, USED and many other federal agencies adopted the Title IX Common Rule pursuant to Executive Order 12,250. Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 65 Fed. Reg. 52,858, 52,859 (Aug. 30 2000) (codified at 22 different locations). It does not appear the USDA was one of the agencies which adopted the Common Rule. The court cannot, on the record before it, determine the proper applicability of the USDA regulations and how that affects the analysis of plaintiffs' Title IX claims. See 20 U.S.C. § 1681 (administrative enforcement of

10

Title IX). Therefore, defendants' motion is DENIED WITHOUT PREJUDICE as to plaintiffs' Title IX claims.

**IV. Statute of Limitations**

Defendants next argue that plaintiffs I.B. and K.B.'s breach of contract claims and 42 U.S.C. § 1983 claims are time-barred because they have been students at the school for more than three years. Defendants argue the statute of limitations is three years and that plaintiffs knew or should have known about the uniform policy when they enrolled. In their response, plaintiffs argue because I.B. and K.B. are minors, the statute of limitations is tolled. In their reply, defendants argue K.B.'s legal guardian failed to bring her claims during the statutory timeframe. The court assumes defendants are conceding the statute of limitations argument as to I.B. because of tolling. As to K.B., tolling is irrelevant as to the constitutional claims, as plaintiffs have alleged an ongoing Constitutional violation. See Virginia Hosp. Ass'n v. Baliles, 868 F.2d 653, 663 (4th Cir. 1989). Furthermore, plaintiffs contend that even if the plaintiffs were not minors and subject to a continuing violation, their breach of contract claim against defendants would not be time-barred because the Charter Agreement was entered into in 2015, and the Operational Documents incorporated into the CDS Management Agreement did not include the requirement that CDS Inc. comply with the federal and state constitutions until June of 2015. At the motion to dismiss stage,

11

defendants have not shown plaintiffs' claims are barred by the statute of limitations. The court does not yet reach the issue of whether plaintiffs are third-party beneficiaries under the contracts at issue.

V.  **Board Members**

Finally, defendants argue the board members as defendants are unnecessary parties to this action and should be dismissed with prejudice. Plaintiffs respond in opposition, noting the operative statutes provide that the board of directors of a non-profit charter school can be sued and that the board members implement school policy, meaning they are responsible for the uniform policy. Furthermore, NC Gen. Stat. § 115C-218.20(a) provides for the purchase of indemnification insurance for the board of directors of a charter school. Therefore, defendants' argument fails at this stage of litigation.

Finally, defendants argue the board members are immune from being sued for money damages under § 1983. While the court agrees charter schools are public schools under state law, this fact standing alone does not mean that the directors of the non-profit corporation who has a charter with the state to run a public charter school are entitled to Eleventh Amendment immunity as state officials acting in their official capacities. See Harter v. Vernon, 101 F.3d 334, 338 (4th Cir. 1996). Defendants have failed

to support this argument with adequate case law; therefore, the motion is denied.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss [DE #27] is DENIED.

Pursuant to Local Civil Rule 101.2, EDNC, and Rules 16 and 53 of the Federal Rules of Civil Procedure, the court ORDERS a court-hosted settlement conference as to all claims in this matter.

United States Magistrate Judge Robert B. Jones, Jr. is hereby appointed as settlement master. Magistrate Judge Jones is directed to meet with the parties and supervise negotiations, with an aim toward reaching an amicable resolution of the issues. Magistrate Judge Jones is given full authority to establish such rules as he may desire, which shall be binding upon the parties and their counsel during the course of the conference. The conference will be conducted at a time and place selected by Magistrate Judge Jones upon notice to the parties.

This 30TH day of March 2017.

Malcolm J. Howard
Senior United States District Judge

At Greenville, NC
#26

13