**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION**

**Case No. 7:16-cv-30**

| | | |
|---|---|---|
| BONNIE PELTIER, as Guardian of A.P., a minor child, et al.; | : | **PLAINTIFFS' MEMORANDUM IN SUPPORT OF ENTRY OF PARTIAL FINAL JUDGMENT UNDER RULE 54(b), DECLARATORY JUDGMENT, AND PERMANENT INJUNCTION, AND IN PARTIAL OPPOSITION TO DEFENDANTS' MOTION FOR INTERLOCUTORY APPEAL, OR, IN THE ALTERNATIVE, ENTRY OF PARTIAL FINAL JUDGMENT** |
| Plaintiffs, | : | |
| v. | : | |
| CHARTER DAY SCHOOL, INC., et al.; | : | |
| Defendants. | : | |

## INTRODUCTION

Plaintiffs, three girls represented by their guardians ad litem, brought this action to challenge the discriminatory uniform policy ("the Uniform Policy") at Charter Day School ("CDS"). The Uniform Policy establishes a dress code requiring girls to wear skirts to school while allowing boys to wear shorts or pants ("the Skirts Requirement"). The suit alleges that the Skirts Requirement violates the Equal Protection Clause of the United States Constitution, pursuant to 42 U.S.C. § 1983, and Title IX of the Education Amendments of 1972. DE 13 ¶¶ 147-166. The suit further alleges that the Skirts Requirement violates the Equal Protection Clause of the North Carolina Constitution and

1

that its enforcement breaches two contracts. *Id.* ¶¶ 167-189. Both parties filed cross-motions for summary judgment on all claims. DE 150, 159, 170, 177, 184.

This Court granted Plaintiffs' Motion for Summary Judgment on their Equal Protection Clause claim and granted Defendants' Motion for Summary Judgment on Plaintiffs' Title IX claim. DE 216 at 17, 33. The Court denied without prejudice the parties' cross-motions for summary judgment on the state constitutional and breach of contract claims, holding that they could be refiled, if appropriate, with additional briefing in support. *Id.* at 34-35. Defendants moved to certify the Court's Equal Protection Clause holding for interlocutory appeal under 28 U.S.C. § 1292(b), or, in the alternative, for entry of partial final judgment on the Equal Protection Clause claim under Federal Rule of Civil Procedure 54(b). DE 226.

Plaintiffs move that the Court issue final judgment as to *both* Plaintiffs' Equal Protection claim and Title IX claim. Entry of partial final judgment is the appropriate vehicle to obtain finality where, as here, the Court has already reached the ultimate disposition on both claims, there is no just reason to delay entry of final judgment, and issuance of a declaratory judgment and injunctive relief are warranted. Nor is there any basis to distinguish between the Court's rulings as to the Equal Protection and the Title IX claims, both of which satisfy the requirements of Federal Rule of Civil Procedure 54(b).

2

Plaintiffs also seek issuance of an injunction and formal entry of declaratory judgment on Plaintiffs' Equal Protection claim, enforcing the Court's holding that the Skirts Requirement violates the Equal Protection Clause.

Entry of partial final judgment, rather than certification of interlocutory appeal, is the appropriate course for this Court to follow at this juncture. Interlocutory appeal should only be made under exceptional circumstances, which are not satisfied here. *See Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 145 (4th Cir. 2001); *Myles v. Laffitte*, 881 F.2d 125, 127 (4th Cir. 1989). Defendants' request for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) constitutes an attempt to short-circuit issuance of the injunction and declaratory relief to which Plaintiffs are entitled under this Court's March 28 Order, DE 216, to safeguard their constitutional rights. Moreover, entry under Rule 54(b) would afford both parties the opportunity to seek appellate review of final rulings on both claims as of right under 28 U.S.C. § 1291, should they so desire.

In addition to being procedurally improper, interlocutory appeal is unwarranted because, based on the factual record before this Court, Defendants cannot satisfy the requirements of demonstrating that there is a "substantial difference of opinion" on the question of whether the Skirts Requirement violates Plaintiffs' rights to equal protection of the law. Defendants' motion to certify interlocutory appeal of the Court's ruling on the Plaintiffs' Equal Protection claim should therefore be denied, and an injunction and declaratory judgment issued forthwith.

3

However, while Plaintiffs do not believe that an interlocutory appeal is warranted on their Equal Protection claim, and would not have independently sought appeal of this Court's ruling on their Title IX claim via such an unfavored mechanism, they request that should the Court certify the Equal Protection claim for interlocutory appeal, it also issue such certification as to the Title IX claim. Unlike the Equal Protection ruling, this Court's ruling on Plaintiffs' Title IX claim does satisfy the requirements for certification under 28 U.S.C. § 1292(b), and providing certification for interlocutory appeal as to both claims would afford both parties the opportunity to obtain appellate review on the rulings adverse to their respective interests.

Finally, the Court should deny the Motion for a Stay of proceedings because the remaining state law claims, which have already been briefed in the Summary Judgment proceedings, *see* DE 150 at 46-50; DE 177 at 47-50; DE 181 at 19-20, would not be affected by issuance of a partial final judgment or issuance of an injunction, and need not await the outcome of any appeal that may follow.

## ARGUMENT

**I.  THE COURT SHOULD ENTER A PARTIAL FINAL JUDGMENT UNDER RULE 54(B) ON BOTH THE TITLE IX AND EQUAL PROTECTION CLAUSE CLAIMS.**

Plaintiffs move this Court to enter partial final judgment on *both* their Equal Protection and Title IX claims. Plaintiffs do not oppose Defendants' argument, posed in the alternative, DE 226 at 14-16, that this Court should enter partial final judgment pursuant to Federal Rule of Civil Procedure 54(b) on Plaintiffs' Equal Protection Clause

4

claim, but see no reason to grant partial final judgment as to one rather than both claims that this Court reached in its March 28 Order. *See* DE 216.

Rule 54 provides, "When an action presents more than one claim for relief . . . the court may direct entry of a final judgment as to one or more, but fewer than all, claims . . . only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). A court's Rule 54(b) determination requires two steps. "First, the district court must determine whether the judgment is final." *Braswell Shipyards, Inc. v. Beazer East, Inc.*, 2 F.3d 1331, 1335 (4th Cir. 1993); *see also Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980). "Second, the district court must determine whether there is no just reason for the delay in the entry of judgment." *Braswell*, 2 F.3d at 1335; *see also Curtiss-Wright*, 446 U.S. at 8. Both conditions are met here as to the Court's rulings on Plaintiffs' Equal Protection and Title IX claims.

## A. The Court's Ruling as to both the Equal Protection and Title IX claims is final.

First, this Court's March 28 Order on the parties' cross motions for summary judgment reached final judgment on both the Equal Protection Clause and Title IX claims. DE 216. To qualify for entry of partial final judgment under Rule 54(b), a decision "must be a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Curtiss-Wright*, 446 U.S. at 7 (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436 (1956)). The

5

March 28 Order reached the ultimate disposition of both the Equal Protection Clause and Title IX claims in the context of a multiple-claims action that also involves pending state law claims. DE 216 at 17, 33 (holding "Title IX does not regulate the uniform policy at issue here" and granting Defendants' motion for summary judgment on that claim, while holding that "the skirts requirement of the uniform policy . . . violates the Equal Protection Clause" and granting Plaintiffs' motion for summary judgment on that claim).

**B. There is no just reason to delay entry of final judgment on the Equal Protection or Title IX claim.**

Second, there is no just reason to delay entry of final judgment on either the Equal Protection Clause or Title IX claim. In deciding whether there are just reasons to delay, "a district court must take into account judicial administrative interests as well as the equities involved. Consideration of the former is necessary to assure that application of the Rule effectively 'preserves the historic federal policy against piecemeal appeals.'" *Curtiss-Wright Corp*, 446 U.S. at 8 (quoting *Sears*, 351 U.S. at 438). In the Fourth Circuit, this inquiry is fact-specific and may involve the following factors, where relevant:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in a set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Braswell*, 2 F.3d at 1335-36.

On the first factor although the remaining state law claims are related in several respects to the federal claims, resolution of the state law claims is in no way necessary prior to entry of final judgment on the federal claims. A final judgment that Defendants cannot justify the Skirts Requirement under the heightened scrutiny applicable under the federal Equal Protection Clause necessarily means Defendants could not meet the more exacting standard applicable under the North Carolina Constitution. *Sneed v. Greensboro City Bd. of Educ.*, 299 N.C. 609, 618, 264 S.E.2d 106, 114 (1980). However, because the North Carolina Constitution subjects violations of Equal Protection that impinge on the exercise of the fundamental right to education to strict scrutiny analysis, the Court could find a violation of the state Equal Protection clause independent of a final ruling under the federal Equal Protection clause. The relationship between the two claims runs in only one direction. Consequently, there is no justification to delay entry of judgment on the federal constitutional claim already decided as it is entirely independent of the remaining state constitutional claim.

Similarly, while the breach of contract claims are in some ways dependent on the resolution of the federal claims, the reverse is not true. If this Court finds that Plaintiffs are third-party beneficiaries of the contracts between CDS, the North Carolina Board of Education, and Roger Bacon Academy, a finding that the Skirts Requirement violates either the Equal Protection Clause or Title IX necessitates a finding that Defendants have breached those contracts. However, a finding of breach of contract based on the North Carolina constitutional violation would have no effect on the resolution of the federal

7

claims. Moreover, resolution of the state law claims also necessitates that the Court make findings that are entirely independent of the federal claims. These include (1) whether Plaintiffs are third-party beneficiaries of the contracts in question; (2) whether a cause of action lies for violations of the state constitution under these circumstances; (3) what standard applies to violations of the right to Equal Protection of the law in the context of the fundamental right to education established by the North Carolina Constitution; and (4) whether the Skirts Requirement violates that constitutional standard. By contrast, the resolution of the state law claims has no bearing on the federal claims already decided. The Court therefore need not delay issuance of a final ruling on either the Equal Protection or Title IX claims in order to reach the remaining claims.

None of the remaining factors weigh against the entry of final judgment. No future developments in the district court would moot the Equal Protection or Title IX claims, making it unlikely that the Fourth Circuit would need to reconsider the same issues a second time. To the extent that an appeal of the state law ruling were to follow appeal of the federal claims, any such appeal would rest almost entirely if not exclusively on the independent state law questions enumerated above. The fourth factor regarding set-off is irrelevant in the instant case where Plaintiffs seek only declaratory relief, injunctive relief, and nominal damages. The fifth miscellaneous factors weigh only in favor of partial final judgment, where litigation has already been pending for over three years, the factual record has been fully developed, and no remaining factual disputes remain to be

resolved. Plaintiffs should not be forced to sustain any further delay to secure protection of their constitutional and civil rights.

Finally, given that the March 28 Order reached the "ultimate disposition" of *both* the Equal Protection Clause and Title IX claims, *see* DE 216; *Curtiss-Wright*, 446 U.S. at 7, there is no justification for granting partial final judgment on the former but not the latter. Doing so would lead to piecemeal litigation and waste judicial resources. *Curtiss-Wright*, 446 U.S. at 8.

## II.    PLAINTIFFS ARE ENTITLED TO DECLARATORY JUDGMENT AND PERMANENT INJUNCTION ON THEIR EQUAL PROTECTION CLAIM.

In addition to issuing partial final judgment on Plaintiffs' Title IX and Equal Protection claims, the Court should issue a permanent injunction and formally enter declaratory judgment in order to secure Plaintiffs' constitutional rights going forward. Rule 54(b) "allows the district court to provide relief to litigants that would suffer undue hardship if final judgment is not entered on the adjudicated claim prior to the resolution of the unadjudicated claims." *Braswell Shipyards, Inc. v. Beazer East, Inc.*, 2 F.3d 1331, 1335 (4th Cir. 1993). A plaintiff seeking a permanent injunction must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Each of these factors is met in this case.

9

First, the deprivation of Plaintiffs' constitutional rights "for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373 (1976); *see also Newsom ex rel. Newsom v. Albemarle Cnty. Sch. Bd.*, 354 F.3d 249, 261 (4th Cir. 2003). This Court already found that the Skirts Requirement "causes the girls to suffer a burden the boys do not, simply because they are female" in violation of the Equal Protection Clause. DE 216 at 33. Specifically, the Court found that the Skirts Requirement "renders them unable to play as freely during recess, requires them to sit in an uncomfortable manner in the classroom, causes them to be overly focused on how they are sitting, distracts them from learning, and subjects them to cold temperatures on their legs and/or uncomfortable layers of leggings under their knee-length skirts in order to stay warm." *Id.* Therefore, continued enforcement of the Skirts Requirement for even minimal periods of time would subject Plaintiffs to irreparable injury.

Second, as courts have long recognized, "monetary damages are inadequate to compensate for the loss of [constitutional] freedoms." *Legend Night Club v. Miller*, 637 F.3d 291, 302 (4th Cir. 2011); *see also Does v. Cooper*, No. 1:13CV711, 2016 WL 1629282, at *13 (M.D.N.C. Apr. 22, 2016), *aff'd sub nom. Doe v. Cooper*, 842 F.3d 833 (4th Cir. 2016). The dignitary harms suffered by the Plaintiffs in this case, including the discomfort, distraction, teasing, and messages of inferiority conveyed by the Skirts Requirement, cannot be compensated, just as their years of being deprived of educational rights equal to their male classmates can never be regained.

10

Third, the balance of hardships weighs strongly in favor of granting a permanent injunction. Plaintiffs face irreparable injury and a violation of their Fourteenth Amendment rights if the Skirts Requirement remains in place. An injunction against enforcement of the Skirts Requirement does not cause injury to Defendants who are "in no way harmed by issuance of an injunction that prevents the[m] from enforcing unconstitutional restrictions." *Legend Night Club*, 637 F.3d at 302-03. Plaintiffs have not challenged Defendants' authority to enforce the Uniform Policy as a whole, and Defendants remain free to enforce the rest of the Uniform Policy. They simply cannot require female students to wear skirts, or prohibit them from wearing pants. Moreover, as this Court recognized, a Uniform Policy that permits female students to wear pants would be just as effective at furthering Defendants' proffered goals—instilling discipline, keeping order, and promoting respect. *See* DE 216 at 31-32. Indeed, following issuance of the Court's March 28 Order, DE 216, Defendants withdrew the Skirts Requirement for the final months of the school year, seemingly without incident.

By contrast, Plaintiffs have reason to fear that absent entry of an injunction, Defendants are likely to reverse their decision to comply with the Court's March 28 Order as soon as they are granted authority to pursue an appeal. Indeed, immediately following the entry of that Order, Defendants published a notification to parents of students at CDS stating that there would be "no changes" to the Uniform Policy due to "ongoing litigation." Booth Decl. at ¶ 5 & Ex. A; Sherwin Decl. at ¶ 4. Only after Plaintiffs inquired through counsel as to whether Defendants intended to comply with the

Court's ruling and expressed their intention to move for an immediate entry of an injunction did Defendants, the following day, publish a second notification permitting girls to wear Uniform Policy-compliant pants or shorts. Booth Decl. at ¶¶ 7-8 & Ex. B; Sherwin Decl. at ¶¶ 5-6 & Ex A. Defendants' voluntary compliance thus far with the Court's Order therefore in no way mitigates the risk that, without an injunction, they will revert to their previous practices and reinstitute the Skirts Requirement, causing Plaintiffs' to again suffer the harms and deprivation of their constitutional rights they have already endured during the entire pendency of this litigation.

As to the fourth factor, "upholding constitutional rights is in the public interest." *Legend Night Club*, 637 F.3d at 303; *see also Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 191 (4th Cir. 2013); *Newsom ex rel. Newsom*, 354 F.3d at 261. It inherently serves the public for this Court to enjoin Defendants from enforcing a policy that it has already held to be unconstitutional.

Finally, in addition to granting an injunction, this Court should formally grant a declaratory judgment that the Skirts Requirement violates the Equal Protection Clause. *See* 28 U.S.C.§ 2201 (providing that a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."); Fed. R. Civ. P. 57 ("The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate"). A declaratory judgment would formalize and bring finality to the conclusion this Court already reached in its March 28 Order. DE 216 at 33. Declaratory judgments "shall have

12

the force and effect of a final judgment or decree and shall be reviewable as such." 28

U.S.C. § 2201. Obtaining such finality would benefit Plaintiffs as well as afford

Defendants the opportunity to seek appellate review in due course. A declaratory

judgment and permanent injunction would thus preserve the status quo and ensure that

Defendants do not reinstate the Skirts Requirement in violation of Plaintiffs'

constitutional right to equal treatment at school.

III.   DEFENDANTS' REQUEST FOR INTERLOCUTORY REVIEW OF THE
       EQUAL PROTECTION RULING SHOULD BE DENIED, BUT IF GRANTED,
       CERTIFICATION SHOULD BE EXTENDED TO BOTH CLAIMS.

       A.  Interlocutory appeal under 28 U.S.C. § 1292(b) is not warranted as to
           Plaintiffs' Equal Protection claim.

       Interlocutory appeal of Plaintiffs' Equal Protection claim is unwarranted because it

is both procedurally disfavored and substantively unsupported. Interlocutory appeal is

permissible pursuant to 28 U.S.C. § 1292(b) upon the Court's finding that a non-final

judgment "involves a controlling question of law as to which there is substantial ground

for difference of opinion and that an immediate appeal from the order may materially

advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). While available

in appropriate cases, there is a general consensus that interlocutory appeal "should be

used sparingly and thus that its requirements must be strictly construed." *Myles v. Lafitte*,

881 F.2d 125, 127 (4th Cir. 1989); *see also Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138,

145 (4th Cir. 2001); *Goodman v. Archbishop Curley High Sch., Inc*., 195 F. Supp. 3d

767, 772 (D. Md. 2016) (courts should grant this "extraordinary remedy only in

exceptional circumstances where early appellate review would avoid a protracted and

13

expensive litigation process" (internal citations omitted)); *United States v. Am. Soc'y of Composers, Authors & Publishers*, 782 F. Supp. 778, 818 (S.D.N.Y. 1991), *aff'd*, 956 F.2d 21 (2d Cir. 1992) (finding entry under Rule 54(b) preferable to certification of interlocutory appeal where one claim is decided and another remained to be addressed, and appellate review was preferable to awaiting final judgment on all claims). For that reason, courts have found that a district court should not certify interlocutory appeal "[u]nless *all* of the statutory criteria are satisfied." *Butler v. DirectSAT USA, LLC*, 307 F.R.D. 445, 452 (D. Md. 2015) (emphasis in original).

Defendants' application for interlocutory appeal of this Court's Equal Protection ruling does not satisfy the "strict" standard required. *See Myles*, 882 F.2d at 127. Plaintiffs do not dispute that the ruling is on a controlling question of law. However, there could be no "substantial ground for difference of opinion," on this factual record, as to the conclusion that CDS is a state actor, or that the Skirts Requirement violates the guarantee of Equal Protection.

As discussed extensively in Plaintiffs' summary judgment briefing, there should be no question that a facial, sex-based classification that is justified on the basis of stereotypes regarding boys' and girls' behavior, or that is based on the notion that girls are more fragile and in need of protection than boys, would fail to survive scrutiny. Indeed, the Supreme Court has left no doubt that *all* sex-based classifications are subject to heightened scrutiny, and that under that exacting review, justifications grounded in gender stereotypes or an appeal to traditional gender roles are per se impermissible.

14

*Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1684, 1692-93 (2017); *United States v. Virginia,* 518 U.S. 515, 533, 555 n.20 (1996); *J.E.B. v. Alabama, ex rel. T.B.*, 511 U.S. 127, 135-36 (1994); *Frontiero v. Richardson*, 411 U.S. 677, 684 (1973); *Knussman v. Maryland*, 272 F.3d 625, 636 (4th Cir. 2001).

Moreover, there can be little doubt that the finding that CDS is a state actor was correct. As a public school, created pursuant to the laws of the State of North Carolina and to the charter granted by the North Carolina Board of Education to provide a free, general public education to all students, CDS exists and operates "by virtue of state law . . . and clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (internal citations omitted); DE 177 at 6-8.[1] CDS also qualifies as a state actor because it receives approximately 95% of its funding from public funds and is subject to an extensive network of state regulations that governs the delivery of education to its students. *Mentavlos v. Anderson*, 249 F.3d 301, 313 (4th Cir. 2001); DE 177 at 8-9. Indeed, when it comes to claims by students challenging school policies or practices, no Court has found that a charter school is *not* a state actor. DE 181 at 3; DE 177 at 7. Therefore, there is no authority in law for substantial difference of opinion on this point.

Finally, *immediate* appeal of the Court's ruling on the Equal Protection claim is not necessary to materially advance the ultimate termination of the litigation, particularly

---

[1] *Manhattan Community Access Corp. v. Halleck*, 139 S. Ct. 1921 (2019), is not to the contrary. There, the majority found that there was no state action because the power delegated to the entity in question—the operation of public access television channels—was not one that the government had any obligation to provide to citizens; however, the Court contrasted that with the obligation found in *West v. Atkins* to provide medical care to prison inmates. *See id.* at 1929 n.1. By contrast, here, the authority that the state of North Carolina expressly delegated to CDS and RBA through its charter—the provision of free public education—is one that the state is obligated to provide pursuant to the North Carolina Constitution.

15

in light of the available remedy of partial final judgment pursuant to Rule 54(b). Entry of partial final judgment would accomplish the same goals and bring finality to both claims decided, without necessitating the analysis required under 28 U.S.C. § 1292(b) as to whether its March 28 Order "involves a controlling question of law as to which there is substantial ground for difference of opinion." At the same time, as previously discussed, entry under Rule 54(b) would authorize issuance—and enforcement—of the injunction to which Plaintiffs are entitled. *See Braswell Shipyards, Inc. v. Beazer East, Inc.*, 2 F.3d 1331, 1335 (4th Cir. 1993).[2] Certification of interlocutory appeal before any injunction has issued is therefore not only unnecessary to advance the litigation, it actually impedes the normal operation of the district court's administration of the case, and risks having the opposite result.

### B.  In the alternative, if the Court certifies the Equal Protection Claim under 28 U.S.C. § 1292(b), it should also certify the Title IX claim and the ruling on RBA's status as a state actor.

For the reasons enumerated above, certification of interlocutory appeal of Plaintiffs' Equal Protection claim under 28 U.S.C. § 1292(b) is not warranted. However, should this Court grant Defendants' motion for interlocutory review, it should also certify Plaintiffs' Title IX claim for interlocutory appeal. Unlike the Equal Protection question, on which there can be little room for disagreement on this record, the question of whether

---

[2] Should an appeal ultimately be taken pursuant to 28 U.S.C. § 1291, the District Court would retain authority to modify or enforce any injunction that had issued. *See Hudson v. Pittsylvania Cnty., Va.*, 774 F.3d 231, 234 (4th Cir. 2014) ("[A] district court's continuing jurisdiction over its permanent injunction order does not render that order non-final within the meaning of § 1291. The district court's ability to modify or terminate an injunction post-judgment 'simply expresses the inherent power . . . possessed by courts of equity to modify or vacate their decrees as events may shape the need.'") (quoting *Holiday Inns, Inc. v. Holiday Inn*, 645 F.2d 239, 244 (4th Cir. 1981) (internal quotation marks omitted)).

16

dress codes that differentiate based on sex and sex stereotypes violate Title IX is a controlling question of law as to which there is substantial ground for difference of opinion.

This Court's grant of Summary Judgment on Plaintiffs' Title IX claim was based on its finding that the Department of Education's revocation in 1982 of a sub-section of its regulations that specifically addressed codes of appearance is entitled to deference. Yet, as Plaintiffs discussed at length in their summary judgment briefing,[3] this revocation reflected a political calculation regarding the prioritization of resources, and it is not entitled to deference when interpreting Title IX's substantive terms. The plain text of Title IX prohibits treating students in a facially different manner on the basis of sex. A separate regulation remains in place that prohibits subjecting male and female students to "separate or different rules of behavior, sanctions, or other treatment." 34 C.F.R. § 106.31(b)(4). Although the statute contains certain defined exceptions (covering, for example, religious organizations, social fraternities or sororities, "voluntary youth service organizations," *see* 20 U.S.C. § 1681(a)(2)-(9) (2012), or separate living facilities, *see* 20 U.S.C. § 1686 (2012)), gender-differentiated dress codes are not among them. To read an exception for dress codes into the statute would be to ignore the Supreme Court's directive to give Title IX "a sweep as broad as its language." *N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 521 (1982).

---

[3] *See Memorandum in Support of Summary Judgment*, DE 150, at 41-46; *Memorandum in Opposition to Defendants' Motion for Summary Judgment*, DE 177, at 34-47; *Reply Memorandum in Further Support of Summary Judgment*, DE 181, at 16-19.

Further, the legislative history of Title IX makes clear that "stereotyped notions" regarding girls' interests and abilities or presumed "differences" between girls and their male peers lie at the very heart of what Title IX was designed to eradicate. *See* 118 Cong. Rec. 5804 (1972) (statement of Sen. Bayh). The express intent of the Skirts Requirement is to teach students "chivalry" and "traditional values" regarding gender—and specifically, to instill the belief that girls are more "fragile" and deserving of "protection" than boys. DE 151 ¶ 94; DE 171 ¶ 94. The justifications animating the Skirts Requirement at CDS should leave no doubt that it amounts to exactly the type of discrimination Title IX was enacted to "root out, as thoroughly as possible." 118 Cong. Rec. 5804 (1972) (statement of Sen. Bayh).

The Seventh Circuit has held not only that Title IX applied to a facially discriminatory hair-length rule, but also that the challenged rule violated the statute. *Hayden v. Greensburg Cmty. Sch. Corp.*, 743 F.3d 569, 583 (7th Cir. 2014). In the context of employment, courts have also held that dress and grooming policies that impose sex-specific burdens based on stereotypes violate Title VII. *See, e.g.*, *Frank v. United Airlines, Inc.*, 216 F.3d 845, 855 (9th Cir. 2000) (different weight requirements between male and female flight attendants facially violated Title VII and were unjustified as a BFOQ); *Gerdom v. Cont'l Airlines, Inc.*, 692 F.2d 602, 610 (9th Cir. 1982) (same); *Carroll v. Talman Fed. Sav. & Loan Ass'n of Chicago*, 604 F.2d 1028 (7th Cir. 1979) (invalidating requirement that only female employees wear uniforms as "demeaning to women," and rejecting defense that women needed a uniform to prevent them from

18

engaging in "dress competition" as "based on offensive stereotypes prohibited by Title VII"). These opinions indicate that there is substantial ground for difference of opinion about whether the Skirts Requirement in place at CDS violates Title IX.

Similarly, there is substantial ground for difference of opinion as to whether RBA is, like CDS, a state actor, and as a corollary, whether it would be subject to Title IX. This Court's opinion finding a lack of state action by RBA rested on the fact that CDS and RBA were not sufficiently "intertwined" to be considered the same entity. DE 216 at 27. However, regardless of the degree of intertwinement between the two entities, the undisputed factual record supports an independent finding that RBA is a state actor based on its actual role in promulgating and enforcing the Skirts Requirement, pursuant to the Management Agreement. RBA was the joint applicant for the Charter, and has been and remains the School's manager, operator, and employer and supervisor of CDS's headmasters and chief administrators. DE 151 ¶¶ 292, 293, 309, 311; DE 171 ¶¶ 292, 293, 309, 311. Those officials act as state actors in enforcing school policy as a matter of law. *New Jersey v. T.L.O.*, 469 U.S. 325, 334 (1985).

Moreover, undisputed evidence demonstrated that Mr. Mitchell, the RBA president, served as Chair of the CDS, Inc. Board at the time the Uniform Policy was established, DE 151 ¶¶ 26, 36; DE 171 ¶¶ 26, 36; it was Mr. Mitchell to whom A.P.'s mother, Bonnie Peltier, was directed for an explanation when she questioned the reasons for Skirts Requirement, and he who provided that explanation, DE 151 ¶¶ 84-87; DE 171 ¶¶ 84-87; and it was Mr. Mitchell who personally authorized changes to the Uniform

19

Policy's contours that took place several months before they were formally approved by the CDS Board, DE 151 ¶¶ 294-301. Thus, the record establishes that RBA has at all relevant times played a principal role in both establishing and enforcing the Skirts Requirement.

Finally, there is no record evidence disputing RBA's receipt of federal funds, albeit indirectly via CDS. *See* 34 C.F.R. § 106.2(i) (defining "recipient" as an entity that receives federal funding either "directly *or through another recipient* . . . including any subunit, successor, assignee, or transferee thereof") (emphasis added); 7 C.F.R. § 15a.105 (same); *Grove City College v. Bell*, 465 U.S. 555, 564 (1984), *superseded on other grounds by Civil Rights Restoration Act*, Pub. L. 100-259, 102 Stat. 28 (1988). Consequently, there is a substantial difference of opinion as to whether, on this factual record, RBA should be considered a private rather than a state actor for purposes of assessing the constitutionality of the Skirts Requirement, or for finding it is subject to Title IX.

## IV.   THE COURT SHOULD DENY DEFENDANTS' MOTION TO STAY THE PROCEEDINGS.

This Court should deny Defendants' motion to stay the proceedings on Plaintiffs' state constitutional and breach-of-contract claims. Should this Court grant the motion for issuance of partial final judgment under rule 54(b), there would be no immediate impact on the state law claims, and proceedings on those claims could continue to move toward a resolution. No factual issues remain to be determined, substantial briefing on those claims has already been submitted, and as stated in section I.B above, Plaintiffs are prepared to

20

further brief the state law claims, including the numerous issues of state law that are entirely independent of the federal claims, while the instant motions are pending. Depending on the Court's calendar, resolution of those claims could even issue at the same time as or shortly subsequent to issuance of a partial final judgment on the two federal claims already decided, obviating altogether the need for piecemeal appeal. Plaintiffs have waited more than three years for vindication of their constitutional rights to equal protection. Because further delay in resolving the remaining claims in this case is unwarranted, Defendants' request for a stay should be denied.

## CONCLUSION

For the foregoing reasons, the Court should grant partial final judgment pursuant to Federal Rule of Civil Procedure Rule 54(b) on both Plaintiffs' Equal Protection Clause and Title IX claims and enter a declaratory judgment and permanent injunction barring Defendants from enforcing the Skirts Requirement in violation of the Equal Protection Clause. In the alternative, should the Court deem interlocutory appeal necessary at this time, the Court should certify both the Equal Protection Clause and Title IX claims for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). No stay should be granted.

Dated: July 3, 2019                    Respectfully submitted,

                                       ELLIS & WINTERS LLP

                                       /s/ Jonathan D. Sasser
                                       Jonathan D. Sasser
                                       NC State Bar No. 10028
                                       Post Office Box 33550
                                       Raleigh, NC 27636

21

Telephone: (919) 865-7000
Facsimile: (919) 865-7010
jon.sasser@elliswinters.com
Local Civil Rule 83.1 Counsel

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION

/s/ Galen Sherwin (with permission)
Galen Sherwin
(LR 83.1(a) special appearance)
Amy Lynn Katz
(LR 83.1(a) special appearance)
Emma Roth
(LR 83.1(a) notice of special appearance
forthcoming)
Women's Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2615
gsherwin@aclu.org
wrp_ak@aclu.org

AMERICAN CIVIL LIBERTIES UNION
OF NORTH CAROLINA LEGAL
FOUNDATION

/s/ Irena Como
Irena Como
North Carolina Bar No. 51812
Sneha Shah
(LR 83.1(a) special appearance)
Post Office Box 28004 Raleigh, NC 27611
Telephone: (919) 834-3466
Facsimile: (866) 511-1344
icomo@acluofnc.org
sshah@acluofnc.org

*Counsel for Plaintiff*

22

**CERTIFICATE OF SERVICE**

I certify that I have electronically filed the foregoing **Memorandum in Support of Entry of Partial Final Judgment under Rule 54(b), Declaratory Judgment, and Permanent Injunction, and in Partial Opposition to Defendants' Motion for Interlocutory Appeal, or, in the Alternative, Entry of Partial Final Judgment** with the CM/ECF system, which will send electronic notification to counsel of record for all parties.

Dated: July 3, 2019                                Respectfully submitted,

                                                   /s/ Jonathan D. Sasser
                                                   Jonathan D. Sasser
                                                   NC State Bar No. 10028
                                                   Post Office Box 33550
                                                   Raleigh, NC 27636
                                                   Telephone: (919) 865-7000
                                                   Facsimile: (919) 865-7010
                                                   jon.sasser@elliswinters.com
                                                   Local Civil Rule 83.1 Counsel

23