# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# SOUTHERN DIVISION
## Case No. 7:16-cv-30

| | |
|---|---|
| BONNIE PELTIER, as Guardian of A.P., a minor child; | ) ) ) |
| ERIKA BOOTH, as Guardian of I.B., a minor child; and | ) ) ) ) |
| PATRICIA BROWN, as Guardian of K.B., a minor child; | ) ) ) |
| Plaintiffs, | ) **DEFENDANTS' RESPONSE TO** ) **PLAINTIFFS' MOTION FOR ENTRY OF** ) **PARTIAL FINAL JUDGMENT UNDER** ) **RULE 54(b), DECLARATORY** ) **JUDGMENT, AND PERMANENT** ) **INJUNCTION, AND REPLY IN SUPPORT** ) **OF DEFENDANTS' MOTION TO** ) **CERTIFY** ) **ORDER FOR APPEAL UNDER** ) **28 U.S.C. § 1292(b), OR, IN THE** |
| v. | ) **ALTERNATIVE, ENTRY OF PARTIAL** ) **FINAL JUDGMENT UNDER RULE 54(b)** |
| CHARTER DAY SCHOOL, INC.; ROBERT P. SPENCER; CHAD ADAMS; SUZANNE WEST; COLLEEN COMBS; TED BODENSCHATZ; and MELISSA GOTT in their capacities as members of the Board of Trustees of Charter Day School, Inc.; and THE ROGER BACON ACADEMY, INC.; | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

# I. INTRODUCTION

The parties agree that the Court should facilitate an immediate appeal of its Equal Protection Clause ruling. The only questions are (1) where it should also facilitate an immediate appeal of its Title IX ruling and its ruling that RBA is not a state actor, (2) how it should facilitate the immediate appeal—via § 1292(b) or Rule 54(b), and (3) whether it should stay the proceedings on the remaining state-law claims during the pendency of the appeal.

There is no cause for broadening the scope of the immediate appeal to include the Title IX ruling and the RBA state-actor ruling. Unlike with the Court's Equal Protection Clause ruling, there is no contrary circuit-court case law on those other two rulings. And an appeal of either ruling would not materially advance the ultimate termination of the litigation.

As for the appropriate vehicle, Section 1292(b) offers the more efficient route to an appeal. Whereas a Rule 54(b) partial final judgment would require the Court to decide the propriety and scope of injunctive relief, a § 1292(b) interlocutory appeal would allow the Court to reserve those matters until the appeal—which may render those questions moot—has run its course and the entire case has concluded. Nor would the lack of an injunction during the appeal prejudice Plaintiffs because Defendants have voluntarily complied with the Court's summary judgment ruling and now represent to the Court that they will continue to do so during the pendency of the interlocutory appeal.

Regardless of which route the Court takes to an immediate appeal, it should stay the proceedings on the remaining state-law claims during the pendency of that appeal. Plaintiffs admit that the state-law claims are intertwined with the federal claims that will be the subject of the appeal. The parties disagree about the precise degree of that entwinement, but whatever that may be, it makes no sense for the Court to adjudicate those state-law claims while the appeal of the federal claims is pending. It may never have to reach those state-law issues depending on the

outcome of the appeal of the federal claims.  And, at the very least, the Court would be risking a quick remand on the appeal from its rulings on the state-law claims because the Fourth Circuit's resolution of the appeal of the federal claims may well change the legal landscape for those state-law claims.

## II.     ARGUMENT

### A.     Only the Court's Equal Protection Clause ruling meets the requirements for an immediate appeal.

Plaintiffs agree that the Court should facilitate an immediate appeal of the Equal Protection Clause ruling, but they try to expand that appeal to include the Title IX ruling and the ruling that RBA is not a state actor.  Neither of those rulings merits immediate appeal.  Whereas Defendants have come forward with on-point circuit-court case law that supports its position in opposition to the Court's Equal Protection Clause ruling, Plaintiffs cannot do the same for the two additional rulings they wish to appeal.[1]  Additionally, the RBA ruling constitutes the application of settled law to specific facts—with no broader significance—and therefore is particularly ill-suited for a § 1292(b) appeal.  Moreover, unlike with the appeal of the Equal Protection Clause ruling, neither an appeal of the Title IX ruling nor an appeal of the RBA state-actor ruling would materially advance the ultimate termination of this litigation.  Those issues stand wholly independent of the state-law claims, and Plaintiffs do not claim otherwise.[2]

---

[1] Plaintiffs' Title IX argument is based heavily on *Hayden v. Greensburg Cmty. Sch. Corp.*, 743 F.3d 569, 583 (7th Cir. 2014).  There, the court did not have occasion to address whether Title IX governs sex-specific uniform policies or evaluate the dispositive administrative regulations because the parties did not raise the Department of Education regulations that the Court relied on here.

[2] If the Court is inclined to include these additional rulings in any immediate appeal, Defendants urge the Court to do so via § 1292(b) rather than Rule 54(b) for the reasons discussed below.

2
Case 7:16-cv-00030-M-KS   Document 233   Filed 07/24/19   Page 3 of 9

**B.     Section 1292(b) provides the more efficient route to an immediate appeal.**

Section 1292(b) offers the appropriate path for an immediate appeal while avoiding the complications of entering a Rule 54(b) partial final judgment. Section 1292(b)'s requirements plainly are satisfied here for the Equal Protection Clause ruling. Plaintiffs dispute that "there is substantial ground for difference of opinion" on the Equal Protection Clause ruling, DE 230 at 14-15, but they do so only by ignoring Defendants' supportive circuit-court authority on that issue, DE 226 at 8-12. Plaintiffs also relegate the Supreme Court's recent state-actor opinion in *Manhattan Community Access Corp. v. Halleck*, 139 S. Ct. 1921 (2019), to a footnote, and even that footnote is limited to addressing one of the footnotes in the opinion. DE 230 at 15 n.1. *Halleck* and Defendants' other unanswered authorities speak for themselves. Although Defendants respect the Court's Equal Protection Clause ruling, they urge that their supportive authorities demonstrate "substantial ground for difference of opinion" on that issue.[3]

With the requisites of § 1292(b) satisfied, that route to an immediate appeal becomes the clear choice. One reason is that § 1292(b) avoids the significant complications of proceeding under Rule 54(b). If the Court were to enter a Rule 54(b) partial final judgment, it would have to resolve at least two additional issues that are disputed—the propriety and scope of injunctive relief. As to the propriety of injunctive relief, no injunction is appropriate at this stage because, as Plaintiffs pointed out, Defendants have voluntarily complied with the Court's Equal Protection Clause ruling during the pendency of litigation and are "permitting girls to wear Uniform Policy-compliant pants or shorts." DE 230 at 12; *see* DE 231, Ex. B. Despite Defendants' adhering to

---

[3] Plaintiffs also dispute Defendants' position that an immediate appeal of the Equal Protection Clause ruling may "advance the ultimate termination of the litigation," but they do so only by arguing that an immediate appeal under Rule 54(b) is preferable. DE 230 at 15-16. That argument is self-defeating because it admits that an immediate appeal (albeit one pursuant to Rule 54(b)) may "advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

3

that position for the three months since the Court's ruling, Plaintiffs express a concern that "without an injunction, [Defendants] will revert to their previous practices and reinstitute the Skirts Requirement." DE 230 at 12. Defendants can allay that concern without the need for an injunction. Defendants now represent to this Court that they will maintain their voluntarily compliance with the Court's Equal Protection Clause ruling during the pendency of the interlocutory appeal and support this representation with a sworn declaration from the chairman of the board of CDS, Inc. Exhibit A. As for scope, the parties have differing views on precisely what conduct should be enjoined pursuant to the Court's ruling, and whether one plaintiff should be able to achieve coercive relief that affects the entire student body.[4] The Court would need to adjudicate those disputes if it enters a Rule 54(b) partial final judgement. By contrast, should Defendants prevail on a § 1292(b) appeal, the Court would not have to resolve these issues now.

In sum, all considerations reveal § 1292(b) to be the superior mechanism for permitting an immediate appeal.

**C.     Regardless of which mechanism the Court uses to permit an immediate appeal, it should stay proceedings on the state-law claims until that appeal is resolved.**

Although Plaintiffs agree with Defendants that the Court should permit an immediate appeal, they do not agree that the Court should stay proceedings on the remaining state-law claims. Plaintiffs argue that no stay is needed because the state-law claims involve "numerous issues of state law that are entirely independent of the federal claims." DE 230 at 21. That is an accurate statement—to a point—but it militates *in favor* of a stay.

As Defendants demonstrated in their Motion, Plaintiffs' state-law claims necessarily would fail if Defendants succeed in their appeal of the Equal Protection Clause ruling. DE 226 at 13.

---

[4] Only one of the three original Plaintiffs still attends CDS. One graduated, and another moved with her family to another location. Exhibit A.

4

Plaintiffs dispute that the entwinement between the federal and state claims goes that far and insist that there may be independent state-law bases on which they can prevail, but they do not and cannot contest the key point that there is at least substantial overlap between the federal and state claims. DE 230 at 7 ("[T]he remaining state law claims are related in several respects to the federal claims . . . ."); *id.* at 8 ("[T]he breach of contract claims are in some ways dependent on the resolution of the federal claims . . . .").

Given that concededly close relationship between the federal and state claims, it makes no sense for this Court to wade into unsettled areas of North Carolina law to resolve the state-law aspects of those claims now. Rushing to adjudicate those state-law claims risks proceeding with what may prove to be an inaccurate or incomplete view of the overlapping aspects of those claims. That may well result in a remand to redo the analysis on the state-law claims if the Fourth Circuit ultimately disagrees with the Court's Equal Protection Clause ruling. The Court should instead wait until the Fourth Circuit has given concrete guidance on the substantial federal-law issues embedded in the state-law claims. That guidance may result in the Court being able to avoid those state-law issues entirely. At the very least, it will allow the Court to proceed on firmer ground if it must still confront those state-law questions.

Nor is there any need to hurry the adjudication of the state-law claims. Plaintiffs seek the same relief on all of their claims, DE 13 at 29-30, so prevailing on the state-law claims would not entitle them to anything more than they are already entitled to under the Court's Equal Protection Clause ruling. Because Defendants are already complying with that ruling and will continue to do so during the pendency of the interlocutory appeal, there is no reason to rush forward with the adjudication of the state-law claims before the federal issues have been firmly resolved.

5

### III. CONCLUSION

For the reasons explained herein and in Defendants' Memorandum, the Court should allow an immediate appeal of the Equal Protection Clause ruling as to CDS, Inc. and the individual Defendants in the Order under § 1292(b), or, alternatively, under Rule 54(b). The Court should also reject Plaintiffs' request for injunctive relief. If the Court permits an appeal via either route, it should stay the case pending that appeal.

Respectfully submitted, this 24th day of July, 2019.

BAKER BOTTS L.L.P.

By: /s/ *Aaron M. Streett*
    Aaron M. Streett
    (*LR 83.1(a) special appearance*)
    Texas State Bar #24037561
    J. Mark Little
    (*LR 83.1(a) special appearance*)
    Texas State Bar #24078869
    910 Louisiana Street
    Houston, Texas 77002
    713.229.1234
    713.229.1522 (facsimile)
    aaron.streett@bakerbotts.com
    mark.little@bakerbotts.com

*Counsel for Defendants*

KNOTT & BOYLE, PLLC

/s/ *W. Ellis Boyle*
W. Ellis Boyle
NC Bar #: 33826
/s/ *Ben Van Steinburgh*
Ben Van Steinburgh
NC Bar #: 44869
4800 Six Forks Road, Suite 100
Raleigh, North Carolina 27609
Telephone: 919-783-5900
Fax: 919-783-9650
ellis@knottboyle.com
ben@knottboyle.com

*Local Civil Rule 83.1 Counsel for Defendants*

**CERTIFICATE OF SERVICE**

On July 24, 2019, I electronically filed this document using the Court's CM/ECF system, which will serve all counsel of record.

/s/ *Aaron M. Streett*
Aaron M. Streett
